| | |
|---|---|
| JOSE ACOSTA,<br><br>        Plaintiff,<br><br>    v.<br><br>MARIA MARTINEZ, et al.,<br><br>        Defendants. | Case No. 1:19-cv-00307-AWI-EPG<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART<br><br>(ECF NO. 16) |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

On March 5, 2019, Plaintiff Jose Acosta ("Plaintiff") filed this suit against Defendants Maria Martinez a/k/a Maria Lourdes Martinez Vasquez d/b/a Accesorios Martinez ("Defednant Martinez") and TBS Properties, Inc. (collectively "Defendants") for alleged violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and related California statutes. (ECF No. 1.)

To date, neither Defendant Martinez nor TBS Properties, Inc. has filed any response to the Complaint. On October 2, 2019, Plaintiff filed the instant motion for default judgment. (ECF No. 16.) Neither Defendant filed a response to the motion. For the reasons that follow, the Court recommends that the motion for default judgment be granted in part.

**I.    BACKGROUND**

Plaintiff filed this action on March 5, 2019, alleging causes of action under Title III of the

1

ADA, California's Unruh Civil Rights Act, and the California Health and Safety Code. The specifics of the allegations are addressed in more detail below, but generally, Plaintiff claims that Defendants own, operate, or lease "Accesorios Martinez," a public business affecting commerce located at 108 S. Chesnut Avenue, Fresno CA 93720 ("the subject facility"). Plaintiff claims that he visited the subject facility on or about January 13, 2019, to buy a gift for his niece. However, he encountered "barriers" that "interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility." (ECF No. 1, p. 2.)

On April 10 and April 11, 2019, Plaintiff filed proof of service into the record. (ECF Nos. 4-5.)[1] Neither Defendant, however, responded to the Complaint. On May 15, 2019, Plaintiff filed a request for default judgment against Defendants. (ECF No. 6.) On May 15 and May 16, 2019, the Clerk of Court entered default against Defendants. (ECF Nos. 6-7.) On June 7, 2019, Plaintiff filed a motion for default judgment against Defendants. (ECF No. 9.) Plaintiff mailed copies of the motions for default judgment and all accompanying documents to Defendants at the addresses at which service of process was accomplished. (ECF Nos. 9-11.)

Neither Defendant filed any response to the motion for default judgment. On July 12, 2019, the Court held a hearing on Plaintiff's motion for default judgment. Defendant TBS Properties Inc. did not appear at the hearing. Defendant Martinez, however, personally appeared at the hearing *pro se*. Defendant Martinez spoke no English and had to communicate with the Court through her daughter, who acted as an interpreter.

At the July 12, 2019 hearing, Plaintiff withdrew his motion for default judgment as to Defendant Martinez, who indicated a desire to respond to the Complaint. The Clerk of Court accordingly vacated the entry of default against Defendant Martinez. (ECF No. 7.)

On July 19, 2019, the Court issued an order commanding Defendant Martinez to file responsive pleadings no later than September 13, 2019. (ECF No. 13.) The Court's order set forth the pertinent Federal Rules of Civil Procedure relating to responsive pleadings.

As for Defendant TBS Properties, Inc., the Court deferred ruling on the motion for default

---

[1] The Court addresses the adequacy of service of process in the analysis section below.

judgment and ordered Plaintiff to notify the Court by August 16, 2019, whether he wished to proceed with the motion for default judgment against that Defendant.

On August 16, 2019, Plaintiff filed a notice indicating a desire to proceed with default judgment proceedings against both Defendants. (ECF No. 14.) Defendant Martinez failed to file responsive pleadings or otherwise communicate with the Court by the September 13, 2019 deadline. Accordingly, on October 2, 2019, Plaintiff filed a renewed motion for default judgment against Defendants. (ECF No. 16.) Plaintiff mailed copies of the motions for default judgment and all accompanying documents to Defendants at the addresses at which service of process was accomplished. (ECF No. 16-11.) Again, neither Defendant filed a response to the motion.

The Court held a hearing on the October 2, 2019 motion for default judgment on November 8, 2019. Defendant TBS Properties, Inc. did not appear. Defendant Martinez again appeared with her daughter. Martinez explained that she attempted to retain the services of an attorney to respond to Plaintiff's Complaint, or at least to speak with Plaintiff's counsel about resolution of the matter. (ECF No. 22, p. 2.) She stated that a lawyer tried to reach defense counsel but was unable to reach him. (*Id.*)[2]

Defendant Martinez asked for additional time to allow her to continue to attempt to retain an attorney or speak directly with Plaintiff's counsel about the Complaint and pending motion for default judgment. (*Id.*) Counsel for Plaintiff, Ms. Moore, provided her contact information to Martinez and spoke to her in Spanish about how to reach her. (*Id.*) At the conclusion of the November 8, 2019 hearing, the Court explained that it would hold Plaintiff's Motion for Default Judgment in abeyance until January 8, 2020, to allow Defendant Martinez time to respond to the Complaint if she was unable to reach a resolution with Plaintiff. (*Id.* at p. 3.) But Defendant Martinez failed to file responsive pleadings by the January 8, 2020 deadline, and on January 14, 2020, the Clerk of Court re-entered default against Defendant Martinez. Plaintiff's motion for default judgment remains pending.

///

---

[2] Plaintiff's counsel, Ms. Tanya Moore, explained that prior co-counsel, Zachary Best, recently left the firm representing Plaintiff.

3

## II. LEGAL STANDARDS FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(b) permits a court to enter default judgment following a defendant's default. *Boards of Trustees v. Energy Management*, 2012 WL 1657523 at *1 (N.D. Cal. 2012) (citation omitted). Rule 55 specifically provides that:

(a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) Entering a Default Judgment

    (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

    (2) By the Court. In all other cases, the party must apply to the court for a default judgement. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared personally or by a representative, that person or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

    (A) Conduct an accounting;

    (B) Determine the amount of damages;

    (C) Establish the truth of any allegation by evidence; or

    (D) Investigate any other matter.

Whether to enter a default judgment lies within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit has enumerated the following factors (collectively, the *Eitel* factors) that a court may consider in determining whether to grant default

judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages." *PepsiCo, Inc. v. Cal. Security Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002) (citation omitted). Therefore, the plaintiff is required to provide proof of all damages sought in the complaint.

## III. ANALYSIS

The Court first addresses its subject matter jurisdiction for entering default judgment before examining the adequacy of service of process. Finally, the Court examines the *Eitel* factors and whether same weigh in favor of entering default judgment.

### A. Jurisdiction

#### 1. Subject Matter Jurisdiction

Initially, the Court finds that it has subject matter jurisdiction over this suit. Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983) (citations omitted)).

Here, Plaintiff alleges a cause of action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. The Court has federal question jurisdiction over this claim under 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the related cause of action under California's Unruh Civil Rights Act. *See Generally* U.S.C. § 1967.

///

### 2. Service of Process on Defendants

"As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a default judgment." *Arroyo v. J.S.T. LLC*, 1:18-cv-01682-DAD-SAB, 2019 WL 4877573 at *4 (E.D. Cal. Oct. 3, 2019) (collecting cases).

Under Federal Rule of Civil Procedure 4(e), service of process of the summons and the complaint on an individual may be made: (1) by mailing a copy of the summons and complaint to the individual defendant with a notice and request for waiver; (2) pursuant to state law; (3) by delivering a copy of the summons and complaint to the individual defendant personally; (4) by leaving a copy of the summons and complaint at the individual defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein; or (5) by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e).

"Under California law, Code of Civil Procedure (C.C.P.) §§§ 415.10, *et seq.*, provides that service of process of the summons and complaint may be made: (1) by mailing a copy of the summons and complaint to the individual defendant with a notice and acknowledgement of receipt; (2) by delivering a copy of the summons and complaint to the individual defendant personally; (3) by leaving a copy of the summons and complaint at the individual defendant's office; or (4) by leaving a copy of the summons and complaint at the individual defendant's 'dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box;' plus mailing to the location at which the summons and complaint have been left." *Bonita Packing Co. v. O' Sullivan*, 165 F.R.D. 610, 613 (C.D. Cal. 1995) (quoting C.C.P. §§ 415.10).

"All means other than personal delivery to the defendant are considered substituted service, and personal service must have been diligently attempted before substituted service may be performed." *Id.* "'Ordinarily,…two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made.'" *Bein v. Brechtel-Jochim Group, Inc.*, 8 Cal.Rptr.2d 351, 352 (Cal. App. 1992) (further citations omitted).

6

As for service on a California corporation, the Federal Rules of Civil Procedure provide for two ways to effectuate service. A corporation may be served in accordance with the law of the state in which the service is to be made, or service may be made by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any agent, authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(h).

"Under California law, service on a corporation may be made by service on the person designated as agent for service of process or 'the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process.'" *Arroyo*, 2019 WL 4877573 at *2 (quoting C.C.P. § 416.40).

The Court finds that service of process was adequate here. As to Defendant Martinez, after attempting personal service twice, the process server left copies of the summons, complaint, and other pertinent documents with one Angel Perez at 108 S. Chesnut Ave., Fresno, CA 93702—the address of the subject facility and accordingly Martinez's business address. (ECF No. 4.) The process server's declaration states that Perez was Martinez's husband, 37 years old, and "apparently in charge." (*Id.*) The process server then mailed a copy of the summons and the complaint by first-class mail, to Martinez, at the subject facility. (*Id.*) This is sufficient service on an individual under California law. *See* C.C.P. § 415.20.(b)[3]

Similarly, as for Defendant TBS Properties, the proof of service document shows that substituted service was issued to Tobias Teran, the chief executive officer of TBS Properties, Inc. More specifically, the process server left a copy of the summons and complaint with the

---

[3] The section specifically states that: "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post box office, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of summons in this manner is deemed complete on the 10th day after the mailing." C.C.P. § 415.20(b).

7

corporation's manager, James Sugar, a person at least 18 years of age and apparently in charge of the office or the usual place of business of the entity served. (ECF No. 5.) The process server also mailed a copy of the summons and complaint to Tobias Teran by first-class mail at the same address. (*Id.*) Plaintiff adequately served Defendant TBS Properties, Inc. pursuant to California law. *See* C.C.P. § 415.20. The Court now turns to whether the *Eitel* factors weigh in favor of default judgment.

### B. Application of the *Eitel* Factors

#### 1. Prejudice to Plaintiff if Default Judgment is not Granted

The Court initially finds that Plaintiff will be prejudiced if a default judgment is not granted. Plaintiff filed this lawsuit on March 5, 2019. If default judgment is not entered, Plaintiff will effectively be denied relief, as it is apparent that Defendants will not appear to defend this action despite adequate service of same. Accordingly, this *Eitel* factor weighs in favor of default judgment.

#### 2. The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

"The second and third *Eitel* factors instruct the Court to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complain itself. It is appropriate for the court to analyze these two factors together." *Arroyo*, 2019 WL 4877573 at *6 (citations omitted). The Court, then, examines the complaint to determine whether it states a claim for the relief sought.

##### a. Americans with Disabilities Act

Plaintiff alleges that Defendants violated his rights under Title III of the ADA. "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations because of [his] disability." *Molski v. MJ. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b). The ADA defines discrimination to include "a failure to remove architectural barriers,…in existing facilities,…where such removal is readily achievable." 42 U.S.C. §

12182(b)(2)(A)(iv). To state a claim for discrimination under the ADA because of "the presence of architectural barriers in an existing facility, a plaintiff must allege and prove that: '(1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable.'" *Hubbard v. 7-Eleven*, Inc., 433 F.Supp.2d 1134, 1138 (S.D. Cal. 2006) (quoting *Parr v. L & L Drive-Inn Rest*., 96 F.Supp.2d 1065, 1085 (D. Haw. 2000)).

### *(i) Plaintiff has Established that He is Disabled under the ADA*

Initially, Plaintiff alleges that he is substantially limited in his ability to walk and must use a wheelchair for mobility. The ADA defines disability to include substantial limitations upon an ability to walk. *See* 42 U.S.C. § 12102. Taking Plaintiff's allegations as true for purposes of this motion, Plaintiff has adequately established disability under the ADA.

### *(ii) Plaintiff has Established Defendants Own, Operate, or Lease a Public Accommodation*

Plaintiff must allege that each Defendant "is a private entity that owns, leases or operates a place of public accommodation." *Molski*, 481 F.3d at 730. Plaintiff alleges that the subject facility is a public accommodation and that he went there to buy a gift. The ADA expressly defines sales establishments as public accommodations. *See* 42 U.S.C. § 12181(7)(E). Plaintiff also expressly alleges that each Defendant either owns, leases, or operates the public accommodation. Again, such allegations are accepted as true for purposes of this default judgment motion.

### *(iii) Plaintiff was Denied Public Accommodations due to an Architectural Barrier*

Next, Plaintiff must demonstrate that he was denied public accommodations due to an architectural barrier. Under the ADA, the Attorney General is responsible for promulgating the implementing regulations for Title III. *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)). In *Fortyune*, the Ninth Circuit examined the history of ADA implementing regulations related to public accommodation accessibility:

> Congress further provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board ("the Access Board"). *See* 42 U.S.C. § 12186(c). The Access Board provided a notice and comment period for its proposed ADA guidelines in 1991, *see* 56 Fed.Reg. 2296-01 (Jan. 22, 1991), and issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") later that year. *See* 56 Fed.Reg. 35,408 (July 26, 1991) (codified at 36 C.F.R. Pt. 36, App. A.) These standards lay out the technical structural requirements of places of public accommodation and are applicable "during the design, construction, and alteration of such buildings and facilities…under the [ADA]." *See id.* App. A, § 1.

*Id.* at 1080-81.

The Ninth Circuit has stated that the ADAAG guidelines provide the "objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (citing *Pascuiti v. N.Y. Yankees*, 87 F.Supp.2d 221, 225 (S.D.N.Y. 1999) (quoting a letter in which the Department of Justice stated that it "consider[ed] any element in a facility that does not meet or exceed the requirements set forth in the [ADAAG] to be a barrier to access.").

Here, Plaintiff alleges the subject facility deviated from the ADAAG in two respects. First, Plaintiff alleges that there were no designated accessible parking stalls at the subject facility and, as a result, Plaintiff had to park in a standard parking space, which lacked an access aisle. Plaintiff is correct that, under the 1991 ADAAG standards, public accommodations must offer accessible parking stalls. *See* 28 C.F.R., Part 36, App. D. § 4.1.5 (requiring public accommodations to offer at least one accessible parking stall). Accordingly, Plaintiff has alleged a violation of the ADAAG and an architectural barrier under the ADA. These allegations are taken as true for purposes of this motion.

Plaintiff next alleges that "the path of travel along the front of the building leading to the entrance was obstructed by the front of vehicles parked adjacent to the building and mannequins displayed on a sidewalk. Accordingly, Defendants failed to provide and maintain proper clear width of the accessible route of travel from the parking to the entrance, pursuant to 1991 ADAAG § 4.3.2 and 2010 Standards § 403.5.1" (ECF No. 16-1, p. 5.) The ADAAG require an accessible route of travel from the accessible parking to the accessible building entrance they serve. *See* 28 C.F.R., Part 36, App. D. § 4.3.2 (requiring at least one accessible route from accessible parking to

the accessible building entrance). Thus, the Court also finds that these allegations, taken as true for purposes of this default judgment motion, demonstrate a violation of the ADAAG and, accordingly, an architectural barrier under the ADA.[4]

This does not end the inquiry, however. The Court must also determine that removal of the architectural barriers is readily achievable. Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

Plaintiff argues that it does not bear the burden of proof as to whether the required changes are readily achievable; instead, Plaintiff contends that whether the barriers are readily achievable is an affirmative defense that is waived unless raised. And, because Defendants have not answered the complaint, the defense is waived here.

"The Ninth Circuit has not decided whether the plaintiff or defendant carries the burden of proving that removal of an architectural barrier is readily achievable, and the majority of district courts in the circuit have applied the Tenth Circuit's burden-shifting framework developed in *Colorado Cross Disability Coal v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999 (10th Cir. 2010)." *Arroyo*, 2019 WL 4877573 at *10 (collecting cases). Under the Tenth Circuit framework, the plaintiff must initially produce evidence that a suggested method of barrier removal is readily achievable, and then the burden shifts to the defendant who bears the ultimate burden of persuasion regarding the affirmative defense that the suggested method is not readily achievable. *Colorado Cross*, 263 F.3d at 1006.

Here, Plaintiff alleges that removal of the barriers is readily achievable. This is sufficient to satisfy his burden under the *Colorado Cross* framework. *See Vogel v. Rite Aid Corp.*, 992 F.Supp. 2d 998, 1011 (C.D. Cal. 2014) (finding that allegation that removal of barrier readily achievable is sufficient for purposes of default judgment); *Johnson v. Hall*, 2:11-cv-2817-GEM-

---

[4] As Plaintiff correctly observes, in 2012, new federal accessibility standards for alterations and new construction went into effect, known as the 2010 ADA Standards for Accessible Design ("2010 Standards"). 28 C.F.R. § 35.151. Alterations to facilities after March 15, 2012, must comply with the 2010 standards. Thus, the 2010 standards govern any injunction that issues here. Under the 2010 standards, like the 1991 ADAAG standards, public accommodations must include designated accessible parking stalls and an accessible route of travel from the parking to the entrance. *See* 2010 Standards §§ 208.2, 403.5.1, and 502.

11

JFM, 2012 WL 1604715 at *3 (E.D. Cal. May 7, 2012) (same). "Defendants have failed to meet their burden because they have failed to appear and present any defense in this matter." *Arroyo*, 2019 WL 4877573 at *10 (finding that the plaintiff in a default judgment proceeding adequately demonstrated removal of barriers was readily achievable when he alleged same and the defendants failed to appear).

Accordingly, Plaintiff has adequately shown violations of Title III of the ADA for purposes of this default judgment motion.

### b. California State Law Claim[5]

Plaintiff also brings a cause of action under California's Unruh Civil Rights Act, which provides in pertinent part that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their…disability…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." C.C.P. § 51(a). "Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000 per violation." *Arroyo*, 2019 WL 4877573 at *10 (citing C.C.P. § 52(a)). A violation of the ADA also constitutes a violation of the Unruh Act. C.C.P. § 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990…also constitutes a violation of this section.").

The Court has already determined that Plaintiff adequately demonstrated a violation of the ADA for purposes of default judgment; thus, Plaintiff has adequately demonstrated a violation of the Unruh Act as well. *See Vogel*, 992 F.Supp.2d at 1011-12; *Villegas v. Beverly Corner, LLC*, 2:16-cv-07651 CASSSX, 2017 WL 3605345 at *5 (C.D. Cal. Aug. 18, 2017). Therefore, the second and third *Eitel* factors support default judgment here.

---

[5] Plaintiff's Complaint also references a cause of action under California's Health and Safety Code §19953. However, Plaintiff's brief does not reference this cause of action. Thus, to the extent such a claim is alleged, the Court finds that Plaintiff has failed to demonstrate entitlement to a default judgment. *See S.A. ex rel. L.A. v. Exeter Union School Dist.*, 1:09-cv-00834, 2009 WL 1953462 at *8 (E.D. Cal. July 7, 2009) ("When seeking a default judgment, a plaintiff should provide the Court with points and authorities containing citations to authority showing that the plaintiff's claim or claims include allegations of all the necessary elements required for entitlement to relief. It is the parties' burden to demonstrate to the Court that under the pertinent law, the plaintiff's claims, as alleged, are legally sufficient.").

### 3. The sum of Money at Stake in this Action

Next, the Court considers the sum of money at stake in the action, with a lower sum supporting default judgment. *See G & G Closed Circuit Events*, *LLC v. Nguyen*, 3:11-cv-06340-JW, 2012 WL 2339699 at *2 (N.D. Cal. May 30, 2012); *PepsiCo Inc.*, 238 F.Supp.2d at 1176. ("Under the third *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.").

Here, Plaintiff seeks statutory fees in the amount of $4,000.00, $1,870.50 in attorney fees, and costs in the amount of $797.43. The Court does not find these amounts to be excessive. Accordingly, the third *Eitel* factor weighs in favor of default judgment. *See, e.g, Arroyo*, 2019 WL 4877573 at *10 (finding that the third *Eitel* factor supported default judgment in ADA case where the plaintiff sought $4,000.00 in statutory damages, $4,000.00 in attorney fees, and $650.00 in costs); *Moore v. Cisneros*, 12-cv-00188-LJO-SKO, 2012 WL 6523017 at *4 (E.D. Cal. Dec. 13, 2012) (noting an award of $10,119.70 on default judgment in ADA discrimination case was "not a relatively large sum of money, nor d[id] it appear unreasonable").

### 4. The Possibility of a Dispute Concerning Material Facts

The Court finds there is no possibility of a dispute concerning material facts. Plaintiff adequately alleged violations of the ADA and Unruh Act, and those allegations are taken as true due to Defendants failure to appear despite adequate service of process. *See PepsiCo Inc.*, 238 F.Supp.2d at 1177 ("[U]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those facts related to damages."). This *Eitel* factor supports default judgment.

### 5. Whether the Default was Due to Excusable Neglect

The Court finds that the default in this matter was not due to excusable neglect. Defendants were adequately served with notice of the Complaint—as well as this motion— and failed to respond. As to Defendant Martinez in particular, the Court twice postponed the default judgment proceedings to allow her time to consult an attorney and determine how to best proceed. The second order noted that the default judgment motion would be held in abeyance until January 8, 2020 and warned Defendant Martinez that the Court would issue an order potentially granting the default judgment if she did not respond to the Complaint by that date. While the Court is

sympathetic to Defendant Martinez's situation, the failure to respond to Plaintiff's Complaint in the year since it was filed is not due to excusable neglect.

Accordingly, the Court finds that this *Eitel* factor weighs in favor of granting default judgment against Defendants.

### 6. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Although the Court notes the general policy against default judgment, that policy does not preclude default judgment here. This is so because Defendants' failure to appear "has made a decision on the merits impossible at this juncture." *Arroyo*, 2019 WL 4877573 at *11.

Accordingly, the Court finds that the policy favoring decisions on the merits, as with all the *Eitel* factors, supports default judgment and recommends that Plaintiff's motion for default judgment be granted.

## C. Relief Requested

### 1. Injunctive Relief

Plaintiff seeks injunctive relief. Specifically, Plaintiff seeks an injunction compelling Defendants to comply with the ADA and the California Unruh Civil Rights Act by removing the barriers identified in the Complaint (i.e. lack of accessible parking stalls and obstructed route of travel along the front of the building). Pursuant to the ADA, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required" by the ADA. 42 U.S.C. § 12188(a)(2). Under federal and state law, Plaintiff is entitled to an injunction requiring Defendants to remove the architectural barriers that he encountered during his visit to the subject facility that violated the ADA. *See Arroyo*, 2019 WL 4877573 at *12 (recommending injunctive relief under similar circumstances where the plaintiff alleged non-compliance with the ADA due to obstructed paths of travel at the subject property). Thus, an injunction should issue commanding Defendants to provide an accessible parking stall and to provide accessible paths of travel to the subject facility in compliance with the 2010 ADA Standards for Accessible Design.

///

### 2. Statutory Damages

Plaintiff seeks statutory damages of $4,000.00 in accordance with the Unruh California Civil Rights Act, which provides for minimum statutory damages of $4,000.00 for each violation. C.C.P. § 52(a). "Under the Unruh Act, statutory damages may be recovered if a violation of one or more construction related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." *Arroyo*, 2019 WL 4877573 at *12 (citing C.C.P. § 55.56(a)). A litigant need not prove actual damages to recover statutory damages under the California Unruh Civil Rights Act.

Here, the Court finds that Plaintiff has adequately established violations of the ADA for purposes of this default judgment motion, which, in turn, establish violations of California's Unruh Civil Rights Act. Therefore, Plaintiff is entitled to recover statutory damages in the amount of $4,000.00.

### 3. Attorney Fees and Costs

The party that prevails on a claim under the ADA may recover "a reasonable attorney's fee, including litigation expenses," at the Court's discretion. "[U]nder the federal fee shifting statutes the lodestar amount is the guiding light in determining a reasonable fee." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuations and citations omitted). "The 'lodestar' amount is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citations omitted). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary…" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

As to the reasonable hourly rate, reasonable hourly rates are calculated by reference to "prevailing market rates in the relevant community," with a special emphasis on fees charged by lawyers of "comparable skill, experience, and reputation." *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), *vacated on other grounds*, 984 F.2d 345 (9th Cir. 1993). Generally, when determining a reasonable hourly rate, the relevant community is the forum in

which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted).

### a. Reasonable Hourly Rate

Here, Plaintiff seeks attorney fees for two attorneys, Zachary M. Best and Tanya E. Moore, and two paralegals, Whitney Law and David Guthrie. Plaintiff proposes $300.00 per hour as a reasonable hourly rate for each attorney. Plaintiff proposes a $115.00 an hour rate for paralegal Law and a $95.00 an hour rate for paralegal Guthrie. In support, Plaintiff states that Mr. Best has been practicing law for over 25 years and regularly bills at $550.00 an hour, and that Ms. Moore has been practicing law for 19 years and regularly bills at $475.00 an hour. Additionally, Ms. Law has more than 10 years of experience and regularly bills at $150.00 an hour, while Mr. Guthrie has over five years of experience and regularly bills at $120.00 an hour.

Courts in this district have found these billing rates reasonable for Mr. Best, Ms. Moore, Mr. Guthrie, and Ms. Law. *See, e.g, Blocks v. Starbucks Corp.*, No. 15-cv-00991, 2018 WL 4352906 at *7-8 (E.D. Cal. Sept. 11, 2018) (finding identical rates for Mr. Best, Ms. Moore, Mr. Guthrie, and Ms. Law to be reasonable); *Trujillo v. Singh*, 16-cv-01640-LJO-EPG, 2017 WL 1831941 at *2, 2017 LEXIS 70092 at *3 (E.D. Cal. May 8, 2017) (same). The undersigned follows suit and finds that the rates sought for Plaintiff's counsel and paralegals are reasonable.

### b. Hours Reasonably Expended

Turning to the second part of the lodestar analysis, the hours reasonably expended, Mr. Best spent 1.5 hours on this matter, which consisted primarily of reviewing and revising filings, including the complaint, request for default, and motion for a default judgment. *See* (ECF No. 16-3, p. 2-3). Ms. Moore spent 1.1 hours on this matter, which consisted of reviewing information provided by the client and correspondence with the client. The Court finds that the hours expended by Mr. Best and Ms. Moore were reasonable.

Turning to the paralegals, Mr. Guthrie spent 4.7 hours on this matter, which consisted of factual research regarding owners and proprietors of the subject facility, drafting the complaint, revising the complaint, sending the summons and complaint out for service, reviewing proof of service, and filing proof of service. The Court finds that these tasks were mostly reasonable.

However, the Court will recommend deduction of .5 hours for filing the proofs of service and sending the summons and complaint out for service, as these tasks are secretarial in nature and not compensable. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (reducing fees for clerical tasks such as filing and organization); *see also Sterling v. Savings Bank v. Sequoia Crossing LLC*, Civ. No. 09-555-AC, 2010 WL 3210855 at *7 (D. Or. Aug 11, 2010) ("Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents."). Thus, the Court finds that Mr. Guthrie reasonably expended 4.2 hours on this matter.

As for Ms. Law, Plaintiff seeks 5.6 hours, which generally consists of reviewing and revising the complaint; sending default letters to Defendants; preparing the request for entry of default; preparing the notice of motion for default judgment, proposed judgment, and supporting declarations; revising the motion for default judgment; and creating exhibits accompanying the motion for default judgment. The Court finds that the entirety of Ms. Law's 5.6 hours were reasonably expended.

Accordingly, the Court's recommended lodestar figures are as follows:

| Name | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| Zachary M. Best | 1.5 | $300.00 | $450.00 |
| Tanya E. Moore | 1.1 | $300.00 | $330.00 |
| Whitney Law | 5.6 | $115.00 | $644.00 |
| David Guthrie | 4.2 | $95.00 | $399.00 |

Thus, the total amount of recommended attorney fees is $1,823.00.

### c. Costs

Plaintiff also seeks $797.43 in costs. In section 12205 of the ADA, Congress authorized a district court, in its discretion, to award the prevailing party its litigation expenses and costs. 42 U.S.C. § 12205. "The term 'litigation expenses' in section 12205 has been interpreted to include 'the same out-of-pocket expenses that are recoverable under 42 U.S.C. § 1988.'" *Riker v.*

*Distillery*, 2:08-cv-00450-MCE-JFM, 2009 WL 4269466 at *5 (E.D. Cal. Nov. 25, 2009) (quoting *Robbins v. Scholastic Book Fairs*, 928 F.Supp. 1027, 1037 (D. Or. 1996) (discussing the legislative intent of section 12205 and finding that "litigation expenses" under section 12205 include the same out-of-pocket expenses that are recoverable under 42 U.S.C. § 1988. Under section 1988, Plaintiff may recover those out-of-pocket expenses that "would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Here, however, Plaintiff has not provided any itemized breakdown of costs. Plaintiff states that such information is contained in Ms. Moore's declaration (ECF No. 4), but the Court is unable to locate it. As the Court is unable to determine how Plaintiff arrived at the $797.43 number, and because Plaintiff offers no proof in support of his request for costs, the Court recommends that Plaintiff's request for costs be denied.

### IV. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Plaintiff's motion for default judgment be granted as to his claims under the ADA and California's Unruh Civil Rights Act;
2. Plaintiff be awarded statutory damages in the amount of $4,000.00;
3. Plaintiff be awarded attorney fees in the amount of $1,823.00;
4. Plaintiff be GRANTED an injunction requiring Defendants to (1) provide a properly configured, located and identified accessible parking stall with an adjacent access aisle, and (2) provide and maintain proper clear width of the route of travel from the designated accessible parking to the entrance of the subject facility; and
5. Plaintiff's request for costs be denied.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the Court, such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir.

2014) (citation omitted).

Finally, the Clerk of Court is directed to mail a copy of these findings and recommendations to Defendant Maria Martinez at 108 S. Chestnut Avenue, Fresno CA, 93702.

IT IS SO ORDERED.

Dated: **March 3, 2020**  /s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE